In the United States Court of Appeals
for the Eleventh Circuit

---

**Appeal No. 23-13322-F**

District Court Case No. 6:22-cr-00052-WWB-LHP

---

United States of America
*Plaintiff/Appellee*,

vs.

IVAN HOLLINGSWORTH
*Defendant/Appellant*.

---

Appeal from the United States District Court
for the Middle District of Florida

---

**MOTION FOR LEAVE TO FILE INNITIAL BRIEF OUT OF TIME**

---

Grady C. Irvin, Jr.
Florida Bar No. 0006548
IRVIN LAW FIRM
P.O. Box 21246
Tampa, Florida 33622
Telephone: 813.659-2000
grady@irvinattorneys.com

*CJA Panel* Counsel for Appellant

DATE: March 14, 2024

United States v. IVAN HOLLINGSWORTH

Appeal No. 23-13322-F

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Rule 26.1, *Fed. R. App. P.*, and 11th Cir. Rule 26.1-1, court-appointed counsel for the Defendant/Appellant certifies that the following persons and/or entities have an interest in the outcome of this case:

Berger, Hon. Wendy W., U.S. District Judge

Hanberg, Roger B., United States Attorney

Hollingsworth, Ivan C., Defendant/Appellant

Irvin, Grady C., Jr., CJA Panel Trial and Appellate Counsel for Defendant/Appellant

Kapusta, Julia R., Asst. U. S. Attorney (Appellate Counsel)

Miranda, Ilianys Rivera, Asst. U.S. Attorney

Price, Hon. Leslie Hoffman, U.S. Magistrate Judge

Rhodes, David P. Asst. U. S. Attorney, Chief, Appellate Division

No publicly traded company or corporation has an interested in the outcome of this appeal.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to F. R. App. P. 32(g)(1), Appellant notifies this Honorable Court that the type style is New Times Roman 14-point, and furthermore there are 647 words in the instant filing.  *See* F.R.App.P. 32(g)(1).

## MOTION FOR LEAVE TO FILE INITIAL BRIEF OUT OF TIME

COMES NOW the Appellant, IVAN HOLLINGSWORTH, and files this *Motion for Leave to File Initial Brief Out of Time*, and briefly states:

1.      Attached is the initial brief of Appellant which was filed on March 29, 2024.  Appellant's brief was to be filed on March 28, 2024.

2.      On March 28, 2024 undersigned counsel was in an all-day mandatory annual CJA-Panel seminar for which he was both a participant and a presenter.

3.      The undersigned encounter some problems in completing edits to the brief and was unable to finish the brief until after midnight.

4.      Undersigned counsel, in good faith, files the instant motion for leave to file the initial brief of Appellant out of time.

WHEREFORE the Appellant, IVAN HOLLINGSWORTH, requests that this Honorable Court grant the requested relief.

Respectfully submitted this 29th day of March, 2024.

IRVIN LAW FIRM

*/s/Grady C. Irvin, Jr.*

_____

**Grady C. Irvin, Jr.**
Florida Bar No. 0006548
P.O. Box 21246
Tampa, Florida 33622
Telephone: 813.659.2000
grady@irvinattorneys.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of March, 2024, a true and correct copy of the underlying filing was provided via CM/ECF to:

**AUSA Julia R. Kapusta**,
Counsel for the United States

*/s/Grady C. Irvin, Jr.*

_____

**Grady C. Irvin, Jr.**
Counsel for IVAN HOLLINGSWORTH

IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

Appeal No. 23-13322-F
District Court Docket No. 6:22-cr-00052-WWB-LHP

_____

UNITED STATES OF AMERICA,
*Appellee,*

vs.

IVAN C. HOLLINGSWORTH,
*Appellant.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

_____

INITIAL BRIEF OF APPELLANT
CRIMINAL CASE

_____

Grady C. Irvin, Jr.
Florida Bar No. 0006548
IRVIN LAW FIRM
P.O. Box 21246
Tampa, Florida 33622
Telephone: 813.659.2000
grady@irvinattorneys.com

**CJA-Panel Counsel for Appellant**

DATE: March 28, 2024

*United States v. Ivan C. Hollingsworth*
Appeal No. 22-13322-F

## CERTIFICATE OF INTERESTED PERSONS and
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1, *Fed. R. App. P.*, and 11th Cir. Rule 26.1-1, court-appointed counsel for the Defendant/Appellant certifies that the following persons and/or entities have an interest in the outcome of this case:

Berger, Honorable Wendy W., U.S. District Court Judge

Handberg, Honorable Roger B., U.S. Attorney

Hollingsworth, Ivan C. Defendant/Appellant

Irvin, Grady C., Jr., Trial & Appellate Counsel for Defendant/Appellant

Kapusta, Julia R., Asst. U.S. Attorney (Appellate Counsel)

Miranda, Ilianys Rivera, Asst. U.S. Attorney (Trial Counsel)

Price, Honorable Leslie Hoffman, U.S. Magistrate Judge

Rhodes, David P., Asst. U.S. Attorney, Chief, Appellate Division

No publicly traded company or corporation has an interest in the outcome of this appeal.

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. Appellant believes that oral argument will assist this Honorable Court.

## CERTIFICATE AS TO TYPE SIZE AND FONT

Appellant states that this brief is written in 14-point Times New Roman, and otherwise complies with the font, pitch, and typeface requisites set forth in Rule 32(a)(5), *Fed. R. App. P*.

## CERTIFCIATE OF COMPLIANCE AS TO LENGTH OF BRIEF

Appellant certifies that this brief complies with the page limitation and/or word limitation set forth in Rule 37(a)(7)(A) and/or Rule 37(a)(7)(B), *Fed. R. App. P*. The principal brief contains 2,902 words/characters.

**TABLE OF CONTENTS**                                   **PAGE NO.**

CERTIFICATE OF INTERESTED PERSONS……………….......... …C-1

STATEMENT REGARDING ORAL ARGUMENT………..…………..…i

CERTIFICATE AS TO TYPE-SIZE AND FONT…………………….…i

CERTIFICATE OF COMPLIANCE AS TO LENGTH OF BRIEF…….......i

TABLE OF CONTENTS…………………………………………………ii

TABLE OF CITATIONS AND ADDITIONIAL AUTHORITIES………...iv

STATEMENT OF JURISDICTION……………..……………………vi

I.      STATEMENT OF THE ISSUES………………………………1

II.     STATEMENT OF THE CASE………………………………...1

        A.      NATURE OF THE CASE ……………………………1

                1.      Background  ..…………………………..1
                2.      Statement Regarding Incarceration………..2

        B.      COURSE OF THE TRIAL COURT PROCEEDINGS AND
                DISPOSITION IN THE COURT BELOW…………..…….2

        C.      STATEMENT OF THE FACTS…..........................................5

        D.      STATEMENT OF THE STANDARDS OF REVIEW……….9

III.    SUMMARY OF THE ARGUMENT………………………….10

IV.    ARGUMENT AND CITATIONS OF AUTHORITY...……………11

      A.    **WHETHER THE DISTRICT COURT MISINTERPRETED AND INCORRECTLY APPLIED THE GUIDELINES BY SUBSTITUTING THE DISTRICT COURT'S DEFINITION OF AN SENTENCING ENHANCEMENT TERM INSTEAD OF THE DEFINITION PROVIDED IN THE COMMENTAR**? .....................11

V.    CONCLUSION………………………………………………...22

VI.    CERTIFICATE OF SERVICE……………………………...23

# TABLE OF CITATIONS

**CASES CITED**                                                    **PAGE NO.**

*Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 415 (1945)..............13

*Gall v. United States*, 522 U.S. 38, 128 S. Ct. 586,
    169 L. Ed.2d 445 (2007)…..………………………………………10

*Stinson v. United States*, 508 U.S. 36 (1993)................................................13

*United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (*en banc*).….12, 13

*United States v. Hixon*, 624 F.Supp.3d 930, 933 (N.D. Ill. 2022)……........11

*United States v. Houser*, 70 F.3d 87 (11th Cir. 1995)…………................10

*United States v. Joseph*, 709 F. 3d 1082 (11th Cir. 2013)…………………10

*United States v. Lewis*, 115 F.3d 1531 (11th Cir. 1997)..............................10

*United States v. Ndiaye*, 434 F.3d 1270, 1280 (11th Cir. 2006)..................10

# STATUTES CITED

18 U.S.C. § 921(a)(3)…..………………………………..…………9, 12

18 U.S.C. § 921(a)(17)(B)…..………………………………..…………8

18 U.S.C. § 922(p)…..………………………………..…………8, 9

18 U.S.C. § 3231.. …………………………………………..…………vi

18 U.S.C. § 3742(a) …………………………………………..…………vi

18 U.S.C. § 3742(a) …………………………………………..…………vi

26 U.S.C. § 5845(a)…………………………………………..………..8, 9, 11

26 U.S.C. § 5845(b)……………………………………………..…………….11

28 U.S.C. § 1291 …...………………………………………..…………..vi

USSG §1B1.1, comment. (n.1 (H))………………………….…………….12

USSG §2K2.1……………………………………………….…….....11

USSG §2K2.1, comment. (n.1)………………………..…..…….8, 10

USSG §2K2.1, comment. (n.11)……………………..…….………..8

USSG §2K2.1(a)…………………………………………..…….……11

USSG §2K2.1(a)(5)………………………………….…………8, 10, 11

USSG §2K2.1(b)……………………………..…………………....11

USSG §2K2.1(b)(1)…………………………..……………….8, 10, 12

**RULES CITED**

Fed. R. App. P. 4(b)…………………………………..…….vi

Fed. R. App. P. 26.1…...……………………………….C1-1

Fed. R. App. P. 32(a)(5)………………………………… …….i

Fed. R. App. P. 37(a)(7)(A)………………………………… …….i

Fed. R. App. P. 37(a)(7)(B)…………………………………… …….i

Fed. R. Crim. P. 11(c)(1)(B)…………………………….........7

11th Cir. R. 26.1-1……………………………… ..…….C1-1

## STATEMENT OF JURISDICTION

Pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), the U.S. Court of Appeals for the Eleventh Circuit has jurisdiction over this cause, which is a) the appeal of a final judgment of conviction entered in a criminal case, and b) the sentence imposed.  The sentence was imposed by the district court judge pursuant to 18 U.S.C. § 3231.  A timely notice of appeal was filed.  *See* Rule 4(b), Fed. R. App. P.

## I.    STATEMENT OF THE ISSUE(S)

A.    **WHETHER THE DISTRICT COURT MISINTERPRETED AND INCORRECTLY APPLIED THE GUIDELINES BY SUBSTITUTING THE DISTRICT COURT'S DEFINITION OF AN SENTENCING ENHANCEMENT TERM INSTEAD OF THE DEFINITION PROVIDED IN THE COMMENTARY**?

## II.    STATEMENT OF THE CASE

## A.    NATURE OF THE CASE

### 1.    Background

Following his arrest in the Northern District of Alabama for transferring hundreds of auto sear devices into the Middle District of Florida, Appellant was twice indicted by a federal grand jury sitting for the Middle District of Florida (Orlando Division).  (Docs. 11 and 72).  Eventually, Appellant pleaded guilty to a three-count Information charging him with (a) two counts of transferring auto-sear devices, and (b) one count of stealing (theft of) government funds by continued unlawful use and receipt of Social Security disability for a deceased person. Appellant was sentenced to concurrent sentences consisting of 120 months and 97 months.

## 2.    Statement Regarding Incarceration

Appellant, who was being detained at the Orange County (Florida) Jail at the time of sentencing, was remanded to the U.S. Marshal to await designation. Appellant is currently housed at Federal Correctional Institution Tallahassee.[1]

## B.    COURSE OF PROCEEDINGS AND DISPOSITION IN THE COURT BELOW

On March 13, 2023 the government filed a three-count Information in the Middle District of Florida charging Appellant with knowingly transferring 125 auto sear devices between January 14-26, 2022 (Count One), 40 auto sear devices between April 11-27, 2021 (Count Two), and theft of government funds between June 2018 and October 2022 (Count Three).  (Doc. 93).  The Information substituted for a 14-count Superseding Indictment returned on January 25, 2023 by a federal grand jury sitting for the Middle District of Florida (Orlando Division) (Doc. 72), which replaced a six-count Indictment which had been returned on April 6, 2022.  (Doc. 11).  On March 20, 2023, Appellant was arraigned before a magistrate judge, and also pleaded guilty to Counts One through Three of the Information.  (Doc. 102).  On April 10, 2023 the presiding district court judge entered an order accepting Appellant's plea of guilty, and thereupon adjudicated

---

[1] Ivan C. Hollingsworth #91715-509, FCI Tallahassee, Federal Correctional Institution, P.O. Box 5000, Tallahassee, Florida 32314.

Appellant guilty of Counts One through Three of the Information. (Doc. 109). On October 3, 2023 the presiding district judge, dismissing Counts One through Fourteen of the Superseding Indictment, sentenced Appellant to a total of 120 months incarceration consisting of a 120-month term as to Counts One and Two, and a 97-month term as to Count Three, with all such terms to run concurrently.[2] (Docs. 131 and 132). On October 9, 2023 Appellant timely filed a notice of appeal. (Doc. 134).

## C.     STATEMENT OF THE FACTS

In February 2021 the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) were engaged in an investigation of various other persons, including Adam Lee Rosemayer ("Rosemayer"), Marc Anthony Hayes ("Hayes"), and James King ("King"), when Appellant was identified as an individual suspected of selling 3D printed auto-sear devices for AR type firearms.[3] The identity of Appellant came about as a consequence of ATF agents purchasing auto-sear devices from Rosemayer, as well as agents' recovery of devices from Rosemayer's residence and

---

[2] As reflected in the underlying judgment, Appellant was also sentenced to three (3) years of supervision upon his release from incarceration. (Doc. 132). The fine was waived; however, restitution was ordered in the amount of $46, 426.91, payable to the Social Security Administration. *Id.*

[3] (Doc. 128 at ¶14). Probation concluded that pursuant to 26 U.S.C. § 5845, auto sears constitute a machinegun because they are "part[s] designed and intended solely and exclusively … for use in converting a weapon into a machinegun." *Id.*

the residence of Hayes.  The auto-sear devices were forensically analyzed by the ATF's Firearms and Ammunition Technology Division ("ATFFATD") and were found to be 3D printed auto-sear devices.[4]  Rosemayer identified Hayes as his source for auto sears,[5] Hayes identified King as his source,[6] and King identified Hollingsworth in Alabama as his source for auto-sear devices.[7]  The U.S. Postal Inspection Service identified six Shippo shipments to King from Florence, Alabama (with customer information for Ivan Hollingsworth (ivanhollingsworthxxx@gmail.com)), with April 2021 and May 2021 shipments aligning with dates Hayes requested auto-sear devices.[8]  ATF agents also located an Instagram account under the name "Ivan Hollingsworth" that advertises "3D printing" and "gun building."[9]  An ATF agent, acting in an undercover capacity, contacted Appellant and ordered two 3D printed auto-sear devices for $15.85.[10]  A shipping label was created on December 5, 2021, and the devices were delivered to

---

[4] (Doc. 128 at ¶17).

[5] (Doc. 128 at ¶15).

[6] (Doc. 128 at ¶16).

[7] (Doc. 128 at ¶18).

[8] (Doc. 128 at ¶19).

[9] (Doc. 128 at ¶20).

[10] (Doc. 128 at ¶21).

an ATF post office box in the Middle District of Florida on December 9, 2021, where thereafter they were forensically analyzed by the ATFFATD and found to be 3D printed auto sears.[11]  On January 24, 2022, after having contacted Appellant via text messaging and paying Appellant $310 via Cash App, ATF in the Middle District of Florida received a package containing 100 auto-sear devices that had been accepted and shipped from the Florence, Alabama post office location on January 21, 2022.[12] ATFFATD analyzed the package and fount the contents to be 3D printed auto-sear devices.[13]  On March 15, 2022 ATF obtained a federal search warrant for Appellant's residence and automobile in Alabama.[14]  On March 17, 2022 the search warrant was executed and ATF agents recovered one Sten Machine Gun, approximately 111 3D printed auto sears, seven firearms, one short barrel rifle, nine silencers (8 of which appeared to be 3D printed), three 3D printers, and various electronic devices.[15]  Post-*Miranda*, Appellant stated during an interview that he had manufactured and sold 3D printed auto-sear devices, was aware the devices were illegal, and that Etsy and

---

[11] (Doc. 128 at ¶2).

[12] (Doc. 128 at ¶23).

[13] (Doc. 128 at ¶23).

[14] (Doc. 128 at ¶27).

[15] (Doc. 128 at ¶27).  The facts of the case also demonstrate that during the requisite dates set forth in the Information at least 165 auto sear devices were shipped into Florida by Appellant.

eBay had removed some of his auto-sear device listings from their websites.[16] Probation contends that Appellant is responsible for the possession or transfer of at least 379 "machine guns."[17]

In May 2018 Appellant's mother passed away.[18]  Subsequent to the death of his mother, Appellant contacted her bank on at least four separate occasions purporting to be the deceased and thereafter then order three replacement debit cards for his mother's bank account in which Social Security benefit checks were deposited post-death.[19]  Appellant admitted recorded phone calls to the bank were his voice, and that he used the debit cards for, *inter alia*, retail purchases and cash withdrawals.[20]  Appellant is said to have knowingly and willfully stole and converted $46,426.91 in funds belonging to the Social Security Administration, a department and agency of the United States—said funds represented Social Security disability benefits in the name of Appellant's deceased mother.[21]

---

[16] (Doc. 128 at ¶28).

[17] (Doc. 128 at ¶30).

[18] (Doc. 128 at ¶31).

[19] (Doc. 128 at ¶31).

[20] (Doc. 128 at ¶33).

[21] (Doc. 128 at ¶32).

After his March 3, 2021 initial arrest (on a federal criminal complaint) and his initial appearance in the Northern District of Alabama, Appellant was granted pretrial release.[22] However, Appellant did not comply with all Court ordered conditions of release, as evidenced by the revocation of Appellant's pretrial release due to his continued contact with firearms, as well as the investigation of Appellant for theft of Social Security Administration-generated benefits while on pretrial release.[23]

As previously noted, Appellant pleaded guilty to Counts One, Two, and Three of an Information.[24]  Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States agreed to recommend to the district court judge that Appellant be sentenced within Appellant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines.[25]

In preparation for sentencing, Probation prepared a presentence investigation report ("PSR").[26]  The United States contended that there should have been a ten-

---

[22] (Doc. 4).

[23] (Doc. 128 at ¶13).

[24] *Supra* at 3.

[25] (Doc. 128 at ¶11).

[26] (*See* Doc. 115, generally).

level increase because "the offense involved 200 or more firearms,"[27] that 26 U.S.C. § 5845(a) is unambiguous and includes an auto-sear device as a "firearm,"[28] and there should be a four-level increase for trafficking in firearms. Probation, in agreement with Appellant, took the position that ten-level increase was inapplicable in that auto-sear devices do not fit within the statutory or guideline definition of "firearm" and cannot be used to increase Appellant's base offense level under USSG §2K2.1(b)(1),[29] and furthermore, there is ambiguity in the guidelines on this issue, including 2K2.1(a)(5), 2K2.1(b)(1), and 2K2.1, comment. (n.1).[30] The sentencing court, siding with the government, disagreed with Appellant and Probation by

---

[27] (Doc. 128, at 22).

[28] (Doc. 128 at ¶12).

[29] *Id.* However, Probation then (contrary to the position of Appellant) states:

> "The Guidelines account for the lack of inclusion of machineguns in the specific offense characteristics by defining a possible upward departure provision, which is found at USSG §2K2.1, comment. (n.11). That provision clarifies that an upward departure may be warranted in any of the following circumstances: (A) the number of firearms substantially exceeded 200; (B) the offense involved multiple National Firearms Act weapons (e.g., machineguns, destructive devises), military type assault rifles, non-detectable ("plastic") firearms (defined at 18 U.S.C. § 922(p)); (C) the offense involved large quantities of armor—piercing ammunition (defined at 18 U.S.C. § 921(a)(17)(B); or (D) the offense posed a substantial risk of death or bodily injury to multiple individuals."

*Id.* Appellant, consistent with his Position that an auto-sear device is not a firearm objected/objects to Probation's position with respect to an "upward" departure.

[30] (Doc. 128 at 22).

holding that under 26 U.S.C. § 5845(a) a firearm includes an auto-sear device and therefore there could be an increase of Appellant's *base offense level*.[31]  Thus, the sentencing court determined that an auto-sear device is a firearm and therefore negated is the commentary's directive to define a firearm pursuant to 18 U.S.C. § 921(a)(3).[32]  The court also agreed there should be a four-level enhancement for trafficking of firearms.[33]  In total, the court concluded its guideline calculations were a total offense level of 30, a criminal history category of I, and a guideline range of 97 to 121 months.[34]

In pronouncing sentence, the sentencing court held that it was "really hard to overcome the conduct" Appellant engaged in while on pretrial release.[35]  The court sentenced Appellant to a total of 120 months incarceration consisting of a 120-month term as to Counts One and Two, and a 97-month term as to Count Three, with all such terms to run concurrently.[36]  (Docs. 131 and 132).  This timely appeal follows.

---

[31] (Doc. 142, at 16 and 18).

[32] (Doc. 142, at 21-22).

[33] (Doc. 142, at 21-22).

[34] (Doc. 142, at 28).

[35] (Doc. 142, at 35).

[36] (Doc. 142, at 38).  This sentence imposed was substantively unreasonable, greater than necessary to achieve the purposes of sentencing and derived at by a misapplication of the guidelines.

## D.    STATEMENT OF THE STANDARD OF REVIEW

A.    The district court's interpretation of the Sentencing Guidelines is subject to *de novo* review on appeal.  *United States v. Lewis*, 115 F.3d 1531 (11th Cir. 1997); *United States v. Houser*, 70 F.3d 87 (11th Cir. 1995).  The appellate court reviews the final sentence imposed under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 169 L.Ed.2d 445 (2007); *United States v. Joseph*, 709 F.3d 1082 (11th Cir. 2013).  Whether a particular Guideline applies to a given set of facts is a question of law subject to *de novo* review. *United States v. Ndiaye*, 434 F.3d 1270, 1280 (11th Cir. 2006); *United States v. Houser*, 70 F.3d 87 (11th Cir. 1995).

## III.   SUMMARY OF THE ARGUMENT

A.    The district court misinterpreted and misapplied the requisite Guideline language provide for in USSG §2K2.1(a)(5), USSG §2K2.1(b)(1), and USSG §2K2.1, comment. (n.1)—resulting in a harmful sentencing error.

## IV.   ARGUMENT AND CITATIONS OF AUTHORITY

**A. WHETHER THE DISTRICT COURT MISINTERPRETED AND INCORRECTLY APPLIED THE GUIDELINES BY SUBSTITUTING THE DISTRICT COURT'S DEFINITION OF AN SENTENCING ENHANCEMENT TERM INSTEAD OF THE DEFINITION PROVIDED IN THE COMMENTARY?**

10

It appears that the United States Sentencing Guidelines have a void—as they do not include machine guns, including devices that convert semiautomatic weapons into fully automatic weapons, in the definition of "firearms."  *See United States v. Hixon*, 624 F.Supp.3d 930 (N.D. Ill 2022).  In the instant case, the guideline for the unlawful receipt, possession, or transportation of firearms or ammunition, and prohibited transactions involving firearms and ammunition is found at USSG §2K2.1.  The *Base Offense Level* to be applied in determining the advisory guideline range is found at §2K2.1(a), while an increase to the offense level is ascertainable under a §2K2.1(b) analysis which will require the existence of certain *Specific Offense Characteristics*.  There is no dispute that the Appellant's base offense level was accurately calculated to be 18—because "the offense involved *a firearm described in 26 U.S.C. § 5845(a)*."[37]  As pointed out by Probation, in determining this *base offense level* of 18 the Commission directed the user to a specific statute, 26 U.S.C. § 5845(a).  However, for purposes of assessing

---

[37] The Guideline provides: Base Offense Level … 18, if the offense involved a firearm described in 26 U.S.C. § 5845(a).  USSG §2K2.1(a)(5).  Title 26 U.S.C. section 5845(b) provides the definition for machinegun as identified in 28 U.S.C. § 5845(a):

> "The term 'machine gun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."

*Id.*

the existence of any *Specific Offense Characteristics* that would provide for an

upward increase of the "base offense level" it necessitates the involvement of three

or more firearms in the offense—and here, "*firearm has the meaning given that*

*term in 18 U.S.C. 921(a)(3)*."[38]  This statute, 18 U.S.C. § 921(a)(3), defines firearm

as (A) any weapon (including a starter gun) which will or is designed to or may

readily be converted to expel a projectile by the action of an explosive; (B) the

frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer;

or (D) any destructive device.[39]  In the instant case, the government sought a ten-

level increase—asserting that the requisite criteria at §2K2.1(b) had been satisfied.

The government conceded that an auto-sear device is not a "firearm" pursuant to

18 U.S.C. § 921(a)(3).[40]  As noted by Probation, directing the user to a specific

statute to determine the base offense level creates genuine ambiguity, and therefore

resorting to the Commentary is necessary.  *See United States v. Dupree*, 57 F.4th

1269 (11th Cir. 2023 (*en banc*).   If the meaning of a regulation is in doubt—if the

---

[38] *See* USSG §2K2.1(b)(1).

[39] Under "General Application Principles" for the United States Sentencing Guidelines themselves, the definition of "firearm," echoing that which is found at 18 U.S.C. § 921(a)(3), provides: "Firearm" means (i) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (ii) the frame or receiver or any such weapon; (iii) any firearm muffler or silence; or (iv) any destructive device. A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.  USSG §1B1.1, comment. (n.1(H)).

[40] (Doc. 128, at 22).

regulation is ambiguous—the court is to consider the issuing agency's interpretation of the regulation.[41]  *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023 (*en banc*), citing *Bowles v. Seminole Rock & Sand Co*., 325 U.S. 410, 415 (1945).  The court has long treated the Commentary to a guideline should receive the same level of deference given to an agency's interpretation of its own rules, and courts are bound by the commentary's interpretation of the Guidelines where there is ambiguity.  *See Stinson v. United States*, 508 U.S. 36 (1993).

## V.    CONCLUSION

Appellant's conviction and sentence should be reversed or otherwise vacated and remanded in light of the foregoing.

Respectfully submitted,

**IRVIN LAW FIRM**

*/s/Grady C. Irvin, Jr.*
_____
Grady C. Irvin, Jr.
Florida Bar No. 006548
P.O. Box 21246
Tampa, Florida 33622
Telephone: 813.659.2000
grady@irvinattorneys.com

**CJA-Panel Counsel for Appellant**

---

[41] It is Appellant's position that it is unambiguous that firearm does not include auto-devices devices and therefore a Appellant offense did not involve 200 or more firearms.  Additionally, there is ambiguity with respect to 2K1.1(a)(5) and 2k1.1(b)(1), and the 2K1.1, comment (n.1), the sentencing court erred in constructing its own definition of an auto-sear device being applicable under 2K1.1(b)(1).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28th day of March, 2024, a true and correct copy of the *Initial Brief of Appellant* was provided to:

**Julia R. Kapusta, AUSA**                    *(via CM/ECF)*

**Ivan C. Hollingsworth #91715-509**         *(via U.S. Mail, postage prepaid)*
FCI Tallahassee
Federal Correctional Institution
P.O. Box 5000
Tallahassee, Florida 32314

**IRVIN LAW FIRM**

*/s/Grady C. Irvin, Jr.*
_____
Grady C. Irvin, Jr.
Florida Bar No. 006548
P.O. Box 21246
Tampa, Florida 33622
Telephone: 813.659.2000
grady@irvinattorneys.com

**CJA-Panel Counsel for Appellant**

14